SHONNIGER MELODEON CO. (HITCHCOCK v.). See Case No. 6,537.

SHOOK (CARILLO v.). See Case No. 2,407.

---

## Case No. 12,804.

### SHOOK et al. v. RANKIN et al.

[6 Biss. 477; 2 Law & Eq. Rep. 236; 8 Chi. Leg. News. 345; 3 Cent. Law J. 569; 22 Int. Rev. Rec. 239.] [1]

Circuit Court, N. D. Illinois. Oct., 1875.

COPYRIGHT—TRANSLATIONS OF PLAYS—INJUNCTION
—PRACTICE.

1. Where the translator of a play, by consent of the author, has obtained a copyright upon it, the owner of such copyright can maintain a bill enjoining any other person from using or representing such translation, or any part of it.

2. Affidavits, evidently intended to be used in a case, but not entitled in it, will be allowed to be read on motion for injunction.

[Cited in Tompkins v. Halleck, 133 Mass. 34.]

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 3 Cent. Law J. 569, contains only a partial report.]

[This was a bill in equity by Sheridan Shook and others against Arthur McKee Rankin and others.] Complainants' bill alleged that prior to February 1, 1875, a dramatic composition or play, entitled "Les Deux Orphelines," was designed and composed in the French language by Adolph D'Ennery and Eugene Cormon, residents and citizens of France. N. Hart Jackson, a resident of the United States, became the owner by purchase and assignment of the original manuscript, for representation in the United States. Before February 1, 1875, Jackson, with the consent of D'Ennery and Cormon composed and arranged a translation from the French play into the English language, and entitled the translation "The Two Orphans," being a literal translation of "Les Deux Orphelines," and adapted his translation for performance and representation to English-speaking audiences. February 1, 1875, by and with the consent of D'Ennery and Cormon, and before publication, Jackson obtained a copyright on his translation, as author, under the copyright laws of the United States. Complainants afterwards became the sole owners and proprietors of the original manuscript in French, the translation by Jackson and his copyright, by purchase and assignment from Jackson. Complainants alleged that the original "Les Deux Orphelines" had never been translated or published with the knowledge or consent of its authors, except the translation by Jackson; that defendants had announced and had on divers nights publicly performed, the "Two Orphans" at the Adelphi Theater in Chicago, without the consent and license of complainants; that defendant Rankin and his associates had previously, and while in the complainants' employ, performed and acted the "Two Orphans," and had thereby familiarized themselves with it, and were acting the same translation at the Adelphi. Prayer for an injunction and accounting. The bill was supported by several affidavits, among which were complainants' and Jackson's. The affidavits were sworn to in New York, but were not entitled of the suit or court until filed. The affidavit of L. F. Post, one of complainants' counsel, was filed, showing these affidavits were made and sworn to for the purposes of this suit and for no other purpose. The defendants denied that Jackson acquired any rights by his translation or copyright; that "Les Deux Orphelines" was translated by consent of the authors by John Oxenford, of London, prior to Jackson's translation; that defendants had obtained from London Oxenford's translation, and intended thereafter to perform the latter and not Jackson's translation. Motion for an injunction upon bill and affidavits to restrain the defendants from publicly performing the "Two Orphans." Upon hearing, defendants objected to the reading of complainants' and Jackson's affidavits, because not properly entitled when sworn to.

[A preliminary injunction had been granted in this cause. Case No. 12,805.]

S. M. Millard and L. F. Post. for complainants. in support of the motion cited, on the point that an author might be a translator, 21 Morgan's Law of Literature, 315–321; as to what constitutes infringement, Boucicault v. Wood [Case No. 1,693]. What is prima facie evidence of copyright? Roberts v. Myers [Id. 11,906].

Clarkson & Van Schaack and Norman J. Emmons, for defendants.

DRUMMOND, Circuit Judge. It seems to me that the complainants are entitled to an injunction to prevent the defendants from performing the work which has been translated from the French of D'Ennery and Cormon by N. Hart Jackson into English, and adapted by him for representation on the stage in this country.

The court can go no farther in deciding a motion of this kind than the proofs of the case clearly warrant. What are the facts established here beyond controversy? They are these: D'Ennery and Cormon were the authors of a drama in the French language called "Les Deux Orphelines"; Jackson translated it into English and adapted it to representation on the stage. This was with the consent of the authors. After this was done, he applied under the law for a copyright; and the question is whether there was any valid objection to his obtaining a copyright for the play, thus translated into English.

I do not see that there was. He was the translator of the play. He adapted it to representation on the stage, and was, in the sense of the law, the author of that for which he obtained a copyright. No one could complain of this, except the authors of the play in French, and it affirmatively appears that they assented to this action on the part of Mr. Jackson. Then I do not see why he was not protected under the law for his translation and adaptation of the work to the stage, and of which he was in one sense the author.

That being so, has the defendant infringed his rights by performing this unpublished drama? To decide that, it is only necessary to determine the effect to be given to sundry affidavits which have been introduced in the case—those of Mr. Shook, Mr. Palmer and Mr. Jackson. I think it is proper for the court to receive these affidavits for the purpose for which they were filed. It is well known that the courts are much more liberal upon this subject than they were in former times. They do not reject affidavits simply because there may be some clerical error or omission, provided it appears that they were intended for the case which the court is called upon to investigate.

It affirmatively appears, I think, that these affidavits were made for the purpose of being used in this case; and conceding that they did not at the time contain the proper title of the cause, still they were made and for-

warded to counsel, who may be presumed to be authorized by the parties to give the proper character to them by stating the name of the cause in which they were to be used. It seems to me that it would be adopting a very rigid rule, and one hardly in accordance with the liberal practice of the present day, to declare that the affidavits should be rejected because at the time when the affidavits were made and signed by the parties, the name of the cause was not stated, provided they knew that they were to be used in the cause, although they did not know the technical description of the title of the same.

Then, these affidavits being received, as I think they should be, there can be no doubt that these defendants—the principal defendants who have performed this play—have been using the translation of Mr. Jackson, as adapted by him for representation on the stage.

They acquired their familiarity with it in consequence of the direct action of the translator or his assignees, and it would be hardly fair under the circumstances of the case that they should be permitted to go on and use it contrary to the wishes of the owners. It has been said that they do not propose to use it any longer; but in view of the facts the court cannot assume that they will not do so, or refuse an injunction on that ground. It is not controverted that these complainants are Jackson's assignees, and are entitled to all his rights. I do not think that, because Mr. Jackson, or, possibly, the complainants, may have been mistaken as to their legal rights, or as to the particular character annexed to their rights of property subsisting in this drama, the court should be prevented from acting in this case. The court will not go into a collateral issue upon this question of injunction. The only point is whether complainants have rights which have been violated by the defendants, and whether they are entitled to an injunction upon the facts as they are presented in the case.

I have no doubt that they are, and therefore an injunction will issue, restraining the defendants from performing the play, which has been translated from the French of D'Ennery and Cormon, by N. Hart Jackson, and adapted by him for representation on the stage, or any part thereof.

As to the romance of the "Two Orphans": It purports to be a story in narrative form, founded, as I suppose, upon the play of the "Two Orphans"; but, so far as I have been able to examine it, I do not see, even conceding that its publication was made with the consent of the complainants, that it deprives them of the right to the play of the "Two Orphans," as translated by Mr. Jackson.

It would take much time for me to go through this story in detail, and compare it with the drama, which I have not had an opportunity of doing. But so far as I have

looked at it, I think it does not deprive the complainants of a right to an injunction on that account.

As to the translations of the French play, I know there may be certain phrases which may be identical in them, as translated by Jackson and Oxenford. There are or may be the same translations of some French words; but, of course, the fact of there being identity of a few phrases does not make them one play as translated.

It always must be a question to be decided by comparison whether or not there is any essential part of the play taken as translated by Mr. Jackson. What I mean is, that they have no right to take any part of this, the work of Mr. Jackson, and use it.

So far as I can see, the translations are made by two distinct persons, and independent of each other. I do not, therefore, touch the Oxenford play in this decision at all. The order will be that the defendants shall not use the whole or any part of Mr. Jackson's translation—the drama which he has translated and adapted for representation on the stage in this country. As at present advised, I shall not enjoin the defendants from using Oxenford's translation.

NOTE. The question of the right to use the Oxenford translation, came up subsequently before Judge Drummond on a motion to attach McKee Rankin for contempt, and he decided that the defendants had the right to use that translation, but that they must be careful not to interpolate any phrases of Jackson's translation.

The consent of an author to publication abroad places him in the position of a foreign author, and is an abandonment of his rights under our statute. Boucicault v. Wood [Case No. 1,693]. The representation of a play upon the stage is not at common law a publication, nor is it a dedication to the public. Crowe v. Aiken [Id. 3,441]. The author's rights at common law have not been taken away or limited by any existing act of congress. Id.